IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **04-K-1391**

**HANS-PETER KAEMPFER,**

   Plaintiff,

v.

**DAVID P. LIEB and LIEB PRECISION TOOLS, INCORPORATED,**

   Defendants.

---

MEMORANDUM OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT

---

KANE, J.

   Plaintiff, Hans-Peter Kaempfer ("Kaempfer"), seeks equitable relief for breach of

an alleged oral contract and declaratory relief for the assignment of patent rights.

Defendants are David P. Lieb ("Lieb") and Lieb Precision Tools, Incorporated ("LPTI").

Both parties have filed Motions for Summary Judgment.  Kaempfer's Motion for Partial

Summary Judgment seeks partial summary judgment on the portion of the written

contract (Convertible Debenture) that is not in dispute.  Defendants seek summary

judgment on the basis that the written contract constituted the entire agreement between

the parties and has been fully performed.

## I.  Facts and Procedural History

   Kaempfer is a citizen and resident of Germany.  Defendants are residents of

Colorado.  The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because

Kaempfer and Defendants have diversity of citizenship and the amount in controversy,

exclusive of costs, exceeds $75,000.

Kaempfer is the owner of a German business entity, Wallram GmbH ("Wallram"),

which manufactures machine tools for the aluminum and steel can industries.  In 2002,

Lieb was employed by Micro Glide, Inc. ("Micro Glide"), a subsidiary of Saint-Gobain

Ceramics & Plastics, Inc.  Wallram was a customer of Micro Glide.  Because of this

business relationship, Kaempfer was acquainted with Lieb and LPTI.

In the spring or summer of 2002, Lieb informed Kaempfer that Micro Glide was

for sale and asked Kaempfer if he was interested in purchasing it.  The parties then met in

Stockholm to discuss the opportunity.[1]

In the fall of 2002, Lieb negotiated with Micro Glide for the purchase of its assets.

Lieb also incorporated LPTI, effective October 1, 2002, to be the purchasing entity.  Lieb

then retained attorney Andrew L. Derickson ("Derickson") to represent LPTI in the

transaction with Micro Glide.

On October 4, 2002, Kaempfer sent an email to Lieb suggesting that the new entity

---

[1]Kaempfer alleges that during the Stockholm meeting, Kaempfer and Lieb agreed that Kaempfer would invest the money necessary to purchase the assets, and that both Kaempfer and Lieb would be shareholders of the new company, with Kaempfer owning at least 51% of the purchasing entity.  No part of this agreement was put in writing.  Kaempfer also alleges that at this meeting, Lieb told Kaempfer that the purchase price of Micro Glide was expected to be approximately $700,000, but that if Micro Glide became aware of Kaempfer's involvement in the purchase, the price would likely increase.   Kaempfer agreed that his involvement should remain undisclosed based on Lieb's representations.  Kaempfer admits that no agreement was reached at the Stockholm meeting as to how Lieb would pay for his stock.

be capitalized with stated capital of $200,000.  (Pl.'s Br. in Supp. of Mot. for Partial

Summ. J. Ex. 5.)  Under the suggested terms, Kaempfer would pay $102,000 for 51% of

the shares of the new entity, and Lieb would pay $98,000 for 49% of the shares of the

new entity.  *Id.*  Kaempfer would then loan the balance of the funds necessary to

complete the purchase of Micro Glide assets by the new entity.  *Id.*  Lieb forwarded this

email to Derickson on October 20, 2002.

In late October, 2002, Kaempfer met with Lieb and Derickson in Colorado.  At the

meeting, the parties discussed the use of a convertible debenture[2] in order to keep

Kaempfer's involvement in the transaction hidden from Micro Glide.  According to

Kaempfer, Derickson presented a convertible debenture form that he had prepared

containing the following provisions:

1.  The amount of the convertible debenture was $700,000.

2.  The interest rate of the convertible debenture was 8% per annum.

3.  The due date of the convertible debenture was one year from the date of its

execution.

4.  Kaempfer had the right to convert the unpaid principal balance into shares of

LPTI "on such terms as shall be mutually agreed between [Kaempfer] and the Board of

Directors of [LPTI]."  (Second Am. Compl. ¶ 20.)

Lieb was the only officer and director of LPTI and was represented by Derickson

---

[2]A "convertible debenture" is an unsecured debt instrument that is convertible into stock
under certain specified conditions.  6A William Meade Fletcher et al., Fletcher Cyclopedia of the
Law of Private Corporations § 2649.10 (perm. ed., rev. vol. 2005).

during this transaction.  Kaempfer was not represented by counsel at this time.

While in Colorado, Kaempfer also opened a bank account with Wells Fargo and wire-transferred $700,000 into the account to be used for the purchase of Micro Glide assets.  On October 26, 2002, the transaction between LPTI and Micro Glide closed with a final purchase price of $650,000.

On November 5, 2002, Kaempfer authorized Wells Fargo to transfer $700,000 to the account of LPTI upon delivery of an executed $700,000 convertible debenture.   On November 12, 2002, LPTI delivered the Convertible Debenture ("Debenture")  to Wells Fargo on Kaempfer's behalf, signed by Lieb as director for LPTI.  (Convertible Debenture, Pl.'s Br. in Supp. of Mot. for Partial Summ. J. Ex. 9)  Wells Fargo then transferred the $700,000 from Kaempfer's account to LPTI, pursuant to Kaempfer's instructions.  Of the $700,000, $650,000 was used to pay Micro Glide for the purchase price and $50,000 was used as working capital for LPTI.

Lieb was the sole officer and director of LPTI.  While employed by LPTI, Lieb developed a process for production of improved zirconia products, a process that is related to the business of LPTI.  During this period of time, Lieb applied for a patent in his name as an individual for the process he had developed.  The patent application remains pending.

On November 12, 2003, the maturity date of the Debenture, Kaempfer retained counsel to send a letter to Lieb notifying Lieb of Kaempfer's intent to exercise his conversion rights under the Debenture.  LPTI and Lieb refused to deliver shares of LPTI

to Kaempfer, claiming that Kaempfer's conversion rights under the Debenture had

expired.[3]  Kaempfer responded by filing this action.

On July 8, 2004, Kaempfer filed the initial Complaint in this Court, seeking relief

for breach of contract, fraud, breach of fiduciary duty, constructive fraud, civil theft, and

other equitable remedies.  Kaempfer later filed an Amended Complaint on February 14,

2005, and a Second Amended Complaint on July 13, 2005, seeking equitable remedies of

specific performance, constructive trust, resulting trust, and money due and owing under

a contract claim, and seeking declaratory judgment on a claim that the patent should be

assigned to LPTI.    Defendants filed a motion to dismiss Kaempfer's claim seeking

declaratory judgment with regard to Lieb's pending application for patent on February 25,

2005, arguing that Kaempfer lacks standing to assert such claim.  I denied the Motion on

March 28, 2005, on the basis that, while Kaempfer's standing is premised on the success

of his claim in the litigation that he has a controlling interest in LPTI,  it would be

premature to dismiss Kaempfer's declaratory judgment claim when the foundation fact is

at issue.  *See* Order (Doc. 36).

On August 8, 2005, counsel for Defendants sent a check to Kaempfer in the

amount of $785,257.10 to pay for the amount owed to Kaempfer by LPTI under the

---

[3]Under the final terms of the agreement, the holder of the convertible debenture
(Kaempfer) had the right to convert the unpaid principal amount into common shares of the
company at any time (1) after 180 days from the date of execution, but prior to the maturity date,
or (2) upon notice from the company of prepayment.  The maturity date was one year from the
date of execution, or November 12, 2003.

Debenture.[4]  Kaempfer disputes the amount due under the agreement, arguing that $102,000 of the original $700,000 was allocated to Kaempfer's investment in LPTI for 51% of LPTI stock and only the remaining $598,000, plus interest, is due and owing under the Debenture.  Kaempfer has not accepted or cashed Defendants' payment.  Both parties have filed Motions for Summary Judgment.

## II. <u>The Convertible Debenture</u>

The 2002 Convertible Debenture, signed by David P. Lieb as Director for LPTI, provided for an effective date of November 12, 2002 and established the parties and terms of the debt instrument.  In relevant parts, the Debenture provides:

> **Paragraph 1.** Lieb Precision Tool, Inc., ... (the "Company"), for value received, hereby promises to pay to Hans Peter [Kaempfer], the holder hereof ("the Holder"), the principal sum of Seven Hundred Thousand Dollars ($700,000) together with interest at eight percent (8%) per annum.  Interest shall be payable monthly, on the first day of each successive month hereafter until the Maturity Date.  All unpaid principal and accrued interest, if any, shall be payable in full on the one year anniversary date hereof (the "Maturity Date") upon presentation and surrender of this Convertible Debenture at the office of the Company.

> **Conversion.**  Subject to the provisions hereof, the Holder of this Convertible Debenture has the right, at his option, at any time after (a) one hundred eighty (180) days from the date hereof, but prior to the Maturity Date hereof, or (b) upon notice from the Company of prepayment, to convert the unpaid principal amount hereof into Common Shares of the Company, as such shares shall be constituted at the date of conversion, on such terms as shall be mutually agreed between Holder and the Board of Directors of the Company.

> Conversion shall be made by Holder's written notice of his election to convert, delivered with this Convertible Debenture to the office of the

---

[4]Defendants allege that the amount paid represents all accumulated principle and interest due.

Company, accompanied by an instrument of transfer in form satisfactory to
the Company, executed by the Holder or his duly authorized agent.  No
adjustments in respect of interest or dividends will be made upon any
conversion.  No fractional shares or script representing fractional shares
will be issued upon any conversion, but an adjustment in cash will be made
in respect of any fraction of a share which would otherwise be issuable
upon the conversion.  (Convertible Debenture, Pl.'s Br. in Supp. of Mot. for
Partial Summ. J. Ex. 1)

The Debenture, as written, gave Kaempfer the option to convert an unspecified
portion of the debt owed to him into common shares of LPTI at any time between 180
days after November 12, 2002 and the maturity date of November 12, 2003.  The
Debenture also specified that Kaempfer must provide written notice of his election to
convert in order to effectuate the conversion.

### III.  Summary Judgment Motions

### A.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed.R.Civ.P. 56(c).  When applying this standard, the
court must view the evidence and draw reasonable inferences therefrom in the light most
favorable to the nonmoving party.  *See Simms v. Oklahoma ex rel. Dep't Mental Health
& Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  Although the movant
must show the absence of a genuine issue of material fact, it need not negate the
nonmovant's claim.  *Id.*  Once the movant carries this burden, the nonmovant cannot rest
upon its pleadings, but "must bring forward specific facts showing a genuine issue for

trial as to those dispositive matters for which it carries the burden of proof." *Id.* "The

mere existence of a scintilla of evidence in support of the nonmovant's position is

insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is

genuine only if the nonmovant presents facts such that a reasonable jury could find in

favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

Where, as here, the parties file cross motions for summary judgment, "[the court is]

entitled to assume that no evidence needs to be considered other than that filed by the

parties, but summary judgment is nevertheless inappropriate if disputes remain as to

material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 132

F.3d 1316, 1319 (10th Cir. 1997), *cert. denied,* 523 U.S. 1048 (1998).  In this regard,

each party as the nonmovant is given "wide berth to prove a factual controversy exists."

*Jeffries v. Kansas,* 147 F.3d 1220, 1228 (10th Cir. 1998) (quoting *Ulissey v. Shvartsman*,

61 F.3d 805, 808 (10th Cir. 1995)).

## B.  Defendants' Motion for Summary Judgment

After two amendments, Kaempfer's Complaint asserts five claims against

Defendants.  For his First, Second, and Third Claims for Relief, Kaempfer seeks

equitable remedies compelling Defendants to issue Kaempfer common stock of LPTI in

amounts sufficient to provide Kaempfer with ownership of 51% of the issued and

outstanding shares of common stock of LPTI for a capital investment in LPTI of

$102,000.  Kaempfer's Fourth Claim for Relief asserts that money is due and owing to

Kaempfer under the Debenture in the amount of the convertible debenture ($700,000)

less Kaempfer's capital contribution ($102,000), together with accrued interest on the amount due.  Alternatively, Kaempfer argues that if his rights are governed solely by the Debenture, which Kaempfer denies, then the principal amount of the convertible debenture ($700,000) is due and owing, together with accrued interest.  Kaempfer's final cause of action seeks a declaratory judgment on Lieb's obligation to assign the patent, if and when issued, on the process for production of improved zirconia products to LPTI.

Defendants have filed a Motion for Summary Judgment as to all of Kaempfer's claims for relief.  For their part, Defendants deny that Kaempfer has any basis for equitable relief.  Regarding the First Claim for Relief of specific performance, Defendants argue that the Debenture is the only written contract between the parties, and because the Debenture itself does not mention the percentage of shares that Kaempfer was to obtain, specific performance is not a viable remedy.

Regarding Kaempfer's Second and Third Claims for Relief of a constructive trust and a resulting trust respectively, Defendants argue that summary judgment should be granted in their favor because (1) there was no fraud or deceit involved in the transfer of the $700,000, (2) LPTI was not unjustly enriched, (3) no fiduciary relationship existed, and (4) the parties never evidenced an intent to create a trust.  Defendants further assert that, under the Debenture, Kaempfer is barred from obtaining LPTI common shares for failing to exercise his conversion rights pursuant to the terms specified.

Regarding the Fourth Claim for declaratory judgment, Defendants argue that

because Kaempfer is not a shareholder of LPTI, he lacks standing to request a declaratory judgment on the assignment of patent rights on behalf of LPTI.

Additionally, for their relief, Defendants seek to settle for the amount of $785,257.10, the amount Defendants tendered to Kaempfer by check dated August 8, 2005, for amounts owed under the terms of the Debenture together with interest. As stated above, Kaempfer has not cashed or deposited the check.

In support of their claim that the written Debenture was the sole agreement between the parties, Defendants claim that all other discussions between the parties lacked acceptance and failed to constitute a meeting of the minds. This assertion fails under a Rule 56 standard.

It is undisputed that the Debenture constituted a debt agreement between the parties. However, a factual dispute exists regarding the totality of the agreement and the contractual status of discussions surrounding the transactions between the parties. Specifically, the parties disagree on the content and result of the Stockholm meeting. Kaempfer claims that the parties reached an agreement that both parties would be owners of LPTI, with Kaempfer owning 51% of the outstanding stock and Lieb owning 49%. Defendants deny that any such agreement was reached, arguing that discussions in Stockholm were preliminary and lacked acceptance, and therefore did not constitute an enforceable agreement between the parties.

In an email to Lieb, Kaempfer suggested a price of $102,000 for his 51% and $98,000 for Lieb's 49%. (Pl.'s Br. in Supp. of Mot. for Partial Summ. J. Ex. 5)

Kaempfer claims that the parties agreed, at the suggestion of Derickson, that the Debenture was used solely for the purpose of keeping Kaempfer's identity hidden during the purchase of assets.  Derickson sent an email to Lieb suggesting the use of the Debenture to keep Kaempfer "as a truly 'silent' partner."  In this email, Derickson also advised Lieb that "after closing, [Lieb] should issue stock in the proportions suggested (51%/49%)."  (Pl.'s Br. in Supp. of Mot. for Partial Summ. J. Ex. 7)

With this evidence, Kaempfer has brought forward specific facts showing a genuine issue for trial as to those dispositive matters for which he carries the burden of proof.  As such, summary judgment in favor of Defendants is untenable.

### C.  Plaintiff's Motion for Partial Summary Judgment

It is uncontested that Kaempfer advanced to LPTI the sum of $700,000, represented by the Debenture.  Of this amount, Plaintiff claims that $102,000 was allocated to Kaempfer's investment in LPTI for 51% of the common stock, while the remaining $598,000, together with interest, is due and owing under the Debenture. Defendants argue that the entire $700,000, together with interest, is due and owing under the Debenture agreement and that Defendants' payment of $785,257.10 on August 8, 2005 satisfies this debt in full.  Plaintiff has filed a Motion for Partial Summary Judgment requesting summary judgment on the $598,000 that both parties agree is due and owing, together with interest.

Regarding the interest due, the Debenture provides for interest to accrue on the unpaid principal balance at a rate of 8% per annum.  Kaempfer requests interest on (1)

11

each monthly payment that was not timely paid, and (2) on the entire amount due from November 12, 2003, the maturity date of the Debenture.  For the interest on each monthly payment that was not timely paid, Kaempfer relies on the terms of the Debenture, which provides for interest on all unpaid principal at eight percent (8%) per annum, payable monthly until the maturity date.  In support of the interest due on the entire amount after the maturity date, Kaempfer relies on the Colorado Revised Statutes section 5-12-102(1)(b), which provides that:

> Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

Defendants claim that the amount of $785,257.10,  paid by Defendants to Kaempfer on August 8, 2005, is full repayment of their obligation, including interest and principal.

If a court finds that summary judgment cannot be granted because there are genuine issues of material fact, it is empowered, when it would be practicable to save time and expense and to simplify the trial, to issue an order that specifies the facts that appear without substantial controversy.  Fed. R. Civ. Pro. 56(d).  This rule was intended to establish plaintiff's rights to an undisputed portion of the amounts claimed, leaving the disputed balances of such claims for trial. *Central States, S.E. & S.W. Areas Pension & Health & Welfare Funds v. McNamara Motor Express, Inc.*, 503 F. Supp. 96 (D. Mich. 1980). In the order, the court may indicate the extent to which the amount of damages or

other relief is not in controversy based on the pleadings as well as the documentary evidence and testimony presented at the hearing on the summary judgment motion. 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2737 (3d ed. 1998).   The order to be entered is in the nature of a pretrial adjudication not a final judgment, not subject to appeal and not enforceable by execution or otherwise.  *Id.*  The facts determined under Rule 56(d) will be deemed established at the trial on the remaining issues.  *Id.*

All parties agree that the amount of $598,000 is due and owing under the Debenture, together with interest.  While final judgment as to the amount of total damages is inappropriate, a partial summary judgment in the nature of a pretrial adjudication or stipulation may be entered to establish this amount owing for the duration of the litigation.  The order shall specify that the amount conceded to be due actually is due without a substantial controversy and, upon trial, that fact will be deemed established.  *Bonda's Veevoederfabriek, Provimi, B.V. v. Provimi, Inc.*, 425 F.Supp. 1034 (D. Wis. 1976).

## IV.  <u>Conclusion</u>

Defendants' Motion for Summary Judgment is DENIED because Kaempfer has brought forward specific facts showing a genuine issue for trial as to those dispositive matters for which he carries the burden of proof.  Kaempfer's Motion for Partial Summary Judgment on the uncontested amount of damages is DENIED because genuine issues of material fact exist with respect to the amount of total damages.  However, a

partial summary judgment in the nature of a stipulation or declaration of law – includable

in the pretrial order –  shall be entered specifying that $598,000 is due and owing.  That

fact will then be deemed to have been established at any subsequent trial.


Dated this 1st day of March, 2006, at Denver, Colorado.


**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE